IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHARLES CHRISTIAN KRIDER,

Petitioner,

v.                                        No. 11-3010-SAC

EMMALEE CONOVER, et al.,

Respondents.

**MEMORANDUM AND ORDER**

This matter comes before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner alleges that (1) he was denied his right to present a complete defense by the trial court's refusal to allow defense evidence of a potential third-party perpetrator; (2) the trial court erred by instructing the jury on lesser included offenses; (3) the prosecutor committed misconduct in calling a particular witness; and (4) he was denied his right to a fair and impartial jury by the trial court's refusal to change venue. Petitioner, in custody and incarcerated at the Winfield Correctional Facility, proceeds pro se, so the court liberally construes his pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

**I. Underlying Facts**

This court presumes that all factual findings of the state court are correct absent clear and convincing evidence to the contrary. 28 U.S.C. §

2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004), *cert denied*, 545 U.S. 1145 (2005). No factual challenge is raised to the following facts from the Kansas Court of Appeals opinion:

On January 19, 2004, Mary LaFaye Noble was supposed to meet the victim, Judith Shrum, at the victim's house south of Chetopa, Kansas. When the victim did not answer her door or phone, Noble and a neighbor discovered the front door was unlocked, entered the house and searched it, but found only the victim's purse and cell phone sitting on a counter and the victim's car parked in the garage. Noble then called 911.

Although there was no sign of forced entry or a struggle, Noble informed the police she noticed wet towels on the bathroom vanity and clothes and a pillow on the floor of the bedroom, which seemed out of place for the victim, a meticulous housekeeper. Law enforcement officers collected the towels from the bathroom, a single hair lying on one towel, and swabs of two stains on the bathroom countertop.

Initially, law enforcement officers feared the victim had harmed herself because of the recent death of her husband. Community members and law enforcement began searching for the victim. On January 21, the victim's house was sealed off as a possible crime scene, and the sheriff's office executed a search warrant on the house a day later, collecting hair from the shower drain and a nightgown and robe from the master bedroom.

Eventually, the victim's partially clothed body was located in a nearby creek on January 23. She had been strangled to death.

The Chetopa police chief filed a report stating he had seen the defendant's vehicle driving in Chetopa at midnight on January 19, 2004. On January 26, two KBI agents interviewed the defendant. The defendant told the agents he had been watching football at a friend's house on January 18 before returning home at about 9 p.m. to play video games for a couple of hours. According to the defendant, around 11 p.m., he drove to some of his property southeast of Chetopa to shoot beavers and returned home around 2 a.m. on January 19, 2004. The defendant told the agents he had met the victim when they both worked for the Chetopa School District in 1996–97. According to the defendant he owned a tilling business and had been to the victim's house to till a garden.

DNA testing on stains from the robe, a towel from the bathroom, and the bathroom vanity revealed a mixture of DNA. Neither the defendant nor the victim could be excluded as contributors to the stains. The defendant's facial hair was found to be consistent with the

hair found on the bathroom towel, and his pubic hair was consistent with a hair from the shower drain.

Ultimately, the State charged the defendant with one count of premeditated first-degree murder ... and one count of aggravated battery .... Later, the State filed an amended complaint/information charging the defendant with one count of premeditated first-degree murder...

The defendant's first trial resulted in a mistrial after the jury could not reach a unanimous decision.

Prior to the second trial, the defendant filed a motion to appoint an expert to conduct a survey to determine if the venue should be changed and a motion for change of venue, arguing the defendant was prejudiced by pretrial media coverage. The district court denied both motions.

At the close of the evidence of the second trial, in addition to first-degree murder, the district court instructed the jury on the lesser included offenses of second-degree murder and voluntary manslaughter, over the defendant's objection. Following deliberation, the jury found the defendant guilty of murder in the second degree. The defendant moved for a new trial, citing multiple errors. The district court denied the motion.

*State v. Krider*, 41 Kan.App.2d 368, 370-71 (2009).

Petitioner was sentenced to a term 165 months imprisonment. On direct appeal, Petitioner argued each of the claims that he now raises before this Court. The Kansas Court of Appeals affirmed his conviction and sentence, and the Kansas Supreme Court denied review. Petitioner then filed for federal habeas corpus relief in this Court. No procedural default or failure to exhaust is alleged.

## II. General Standards for 2254 Motions

Federal habeas corpus relief is available under § 2254 only upon a showing that petitioner is in custody in violation of the constitution or laws of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). This court

cannot correct errors of state law, and is bound by the state court's interpretation of its own law. *Id.*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern a federal court's review of petitioner's claims. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Under § 2254, as amended by AEDPA, the Court may not grant federal habeas corpus relief unless the applicant establishes the state court's adjudication of the claims resulted in a decision that was either (1) "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). *See also Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). This standard is difficult to meet, because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction. *Greene v. Fisher,* 132 S.Ct. 38, 43-44 (2011) (quotations and citations omitted).

### III. Exclusion of Third-Party Perpetrator Evidence

Petitioner first contends that his constitutional right to present a complete defense was violated by the trial court's exclusion of evidence that the victim's son-in-law (Cook) framed Petitioner by placing Petitioner's hair

and blood in the victim's house. Petitioner contends that the following facts warrant the admission of his third-party perpetrator theory and evidence:

- Cook was married to the victim's daughter;

- Cook's wife was the sole beneficiary of the victim's assets, so Cook had a motive to kill the victim;

- He and Cook worked together;

- Cook served as the first-aid officer at Petitioner's workplace and Petitioner went to first-aid twice when Cook was serving as the safety officer, so Cook had direct access to Petitioner's blood and hair;

- Cook had the opportunity to plant Petitioner's blood and hair in the victim's house because Cook and his wife stayed overnight at the victim's house at least once after the murder, before the house was secured as a crime scene;

- Cook called in sick to work on January 19th, the day the victim was killed.

- Cook was in the general vicinity of the crime at the time of the crime.

- No DNA evidence showed that the victim struggled or was dragged from her house;

- None of the victim's DNA was found in Petitioner's vehicle or house; and

- No stolen items from the victim's home were found in
  Petitioner's possession.

## A. State Court Rulings

The State's evidence against the Petitioner was circumstantial, as was the Petitioner's evidence of a third-party perpetrator. The trial court excluded Petitioner's third-party perpetrator evidence as speculative and irrelevant because no evidence connected Cook to the crime. R.Vol. I, p. 11.

> Relevant evidence is "evidence having any tendency in reason to prove any material fact." K.S.A. 60–401(b). To establish relevance, there must be some material or logical connection between the asserted facts and the inference or result they are designed to establish. *State v. Lumley,* 266 Kan. 939, 950–51 ... (1999).

*State v. Marsh,* 278 Kan. 520, 531 (2004), *rev'd on other grounds,* 548 U.S. 163 (2006).

The Kansas law applied by the trial court deems third-party evidence irrelevant unless the defense shows an "effective connection" between the third-party perpetrator and the commission of the crime.

> The admissibility of third-party evidence is evaluated under the "totality of facts and circumstances in a given case." (citations omitted). To be admissible, third-party evidence must "effectively connect the third party to the crime charged." (citation omitted). Additionally, third-party evidence must reveal more than motive to be relevant. (citation omitted).
>
> In *Marsh,* we held that "while evidence of the motive of a third party to commit the crime, standing alone, is not relevant, such evidence may be relevant if there is other evidence connecting the third party to the crime." (citation omitted). We explained that evidence of third-party motive alone, without connection to the crime charged, serves only to " 'confuse the jury [and] to permit [jurors] to indulge in speculations on collateral matters wholly devoid of probative value relative to who committed the [crime].' " (citation omitted). In

6

> *Marsh,* we held the third-party evidence was admissible because defendant's claims not only showed motive but there was also was direct evidence that the third-party's blood as well as the blood of a victim appeared on the defendant's shoes. *But see Brown,* 285 Kan. at 305, 173 P.3d 612 (Third-party evidence inadmissible because defendant's claims were "baseless innuendo" with no connection to the crime charged.).

*State v. Tahah*, 293 Kan. 267, 274-75 (2011).

Kansas cases historically applied the "effective connection" test only when the State's case against the defendant was based on direct evidence, but more liberally admitted third-party evidence when the State's case was based on circumstantial evidence. Earlier Kansas cases relied upon "a well settled rule of evidence in Kansas that *when the state produces direct evidence of guilt,* 'circumstantial evidence that someone other than the defendant committed the crime charged is irrelevant in the absence of other evidence to connect such third party with the crime.' *State v. Bornholdt,* 261 Kan. 644 ... (1997)." (emphasis added). *See State v. Potts,* 205 Kan. 42 (1970) (holding "*when the state relies on direct rather than circumstantial evidence for conviction,* evidence offered by defendant to indicate a possible motive of someone other than the defendant to commit the crime is irrelevant absent other evidence to connect such third party with the crime") (emphasis added). As stated in *State v. Hooker*, 271 Kan. 52 (2001):

> We have found that when the State's case relies heavily on circumstantial evidence, it is error to exclude circumstantial evidence that someone else committed the crime when the defendant's proffered evidence includes the timely placement of another person at the murder scene... conversely, we have been stricter on admission when the State relies on direct evidence ... Circumstantial evidence

> that someone other than the defendant committed the crime is
> irrelevant in the absence of other evidence to connect that other
> person with the crime charged.

*Hooker*, 271 Kan. at 65. *See State v. Henderson*, 205 Kan. 231, 239-240

(1970) ("Ordinarily, a court does not err in refusing to admit evidence

tending to connect a third person with an offense *except where the*

*prosecution relies upon circumstantial evidence for conviction*.) (emphasis added).

Historically, no showing of an "effective connection" between the third-

party perpetrator and the crime was required when the State's evidence was

circumstantial, as is illustrated in *State v. Scott*, 117 Kan. 303 (1924). In

*Scott*, the defendant sought to present evidence tending to show that within

five minutes after the homicide, a named person whose home was in

another town and who had a penal record for burglary, larceny, and similar

crimes, was observed near the scene of the homicide, then fled the city a

few hours thereafter. The Kansas Supreme Court found reversible error in

excluding that third-party evidence because the case against the defendant

was circumstantial.

> When one is charged with a crime, and the prosecution relies upon
> circumstantial evidence for his conviction, the defendant is entitled to
> show as a part of his defense circumstances reasonably tending to
> show that another committed the crime.

*Scott*, 117 Kan. at 313. The reason for relaxing the rule when the State's

case against the defendant is circumstantial is that it would be unfair to

require the defendant to make a higher evidentiary showing with respect to

a third person than the State is required to make with respect to the

8

defendant. *Scott*, 117 Kan. at 315-16. Accordingly, when the state relies upon circumstantial evidence to convict the accused, the courts are generally more liberal in receiving "evidence of threats, motive, presence in the vicinity, flight, or confession, and circumstances tending to connect the third person with the offense, than in cases where there is direct evidence against the accused." *Id*. Thus no "effective connection" was required; evidence "tending to show" a connection was sufficient.

Recent Kansas cases tacitly reject the previous distinction, and find that admission of third-party evidence in Kansas does not depend on any distinction between direct and circumstantial evidence. *State v. Inkelaar*, 293 Kan. 414, 440 (2011); *Marsh,* 278 Kan. at 531. Cases recognize that the "third-party evidence rule has limited application and is most assuredly subordinate to the general rules of evidence ..." *Marsh*, 278 Kan. at 531. Kansas cases currently apply in both direct and circumstantial cases the evidentiary requirement previously applied only in direct evidence cases - that an "effective connection" be shown before third-party evidence may be admitted. Thus even when the State's case against a defendant is circumstantial, the district judge "must evaluate the totality of facts and circumstances in a given case to determine whether the defense's proffered evidence effectively connects the third party to the crime charged." *State v. Adams,* 280 Kan. 494, 505 (2005). *See Marsh,* 278 Kan. at 531; *State v. Evans,* 275 Kan. 95, 105 (2003); *Hooker,* 271 Kan. 52.

On appeal, the Kansas Court of Appeals found that the trial court had properly applied the "effective connection" rule, finding:

> The district court evaluated the totality of the defendant's proffered evidence and determined it did not effectively connect Cook to the crime charged. The defendant's proffered evidence was that Cook had a possible motive to commit the crime because his wife would benefit from the inheritance, and that as a first-aid officer at the defendant's place of work, Cook could have had the opportunity to collect the defendant's hair from headgear and blood from used bandages to later plant at the crime scene while staying there overnight. This evidence is nothing more than mere speculation and conjecture and does not connect the third party to the crime, and therefore the district court did not err in excluding it.

*Krider*, 41 Kan.App.2d at 376.[1]

## B. Clearly Established Federal Law

On habeas review, this Court is not asked to determine the correctness of the court's evidentiary ruling. Instead, it reviews only the reasonableness of the trial court's conclusion in light of relevant law established by the United States Supreme Court.

That law consists of the general principles that criminal defendants must be given a meaningful opportunity to present a complete defense; that evidentiary rules excluding defense evidence may not be arbitrary or disproportionate to the purposes they are designed to serve; and that alternative-suspect evidence is admissible subject to well-established rules of evidence. *Smith v. Wilson,* Slip Copy, 2012 WL 130729 (10th Cir. 2012).

---

[1] The Court of Appeals misstated defendant's strategy, saying it was "to suggest someone other than the defendant may have left traces of defendant's DNA in the victim's house *while the defendant was tilling the victim's garden.*" *Krider*, 41 Kan.App.2d at 378 (emphasis added). But that error was made in examining Petitioner's claim of prosecutorial misconduct, and did not affect the Court's ruling on this issue.

The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *Holmes v. South Carolina,* 547 U.S. 319, 324 (2006). That right, however, is not absolute, and States have broad latitude to establish rules excluding evidence from criminal trials. *Id.* One of those well-established rules of evidence is that there must be some material or logical connection between the asserted facts and the inference or result they are designed to establish, to be relevant.

> Evidence tending to show the commission by another person of the crime charged may be introduced by [the] accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded.

*Holmes*, 547 U.S. at 327 (quotation omitted). Third-party guilt evidence may also be excluded "where it does not sufficiently connect the other person to the crime … [such as where it is] speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial." *Id. See Crane v. Kentucky*, 476 U.S. 683 at 689-690 (1986) (the Constitution permits judges "to exclude evidence that is 'only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.' ") (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Accordingly, "courts may properly deny admission of third-party perpetrator evidence that fails to establish…a non-speculative "nexus" between the crime charged and the alleged perpetrator." *United States v.*

11

*Jordan,* 485 F.3d 1214, 1218-19 (10th Cir. 2007). The Tenth Circuit

explained this nexus requirement in *United States v. McVeigh*:

> Although there is no doubt that a defendant has a right to attempt to
> establish his innocence by showing that someone else did the crime, a
> defendant still must show that his proffered evidence on the alleged
> alternative perpetrator is sufficient, on its own or in combination with
> other evidence in the record, to show a nexus between the crime
> charged and the asserted "alternative perpetrator." It is not sufficient
> for a defendant merely to offer up unsupported speculation that
> another person may have done the crime. Such speculative blaming
> intensifies the grave risk of jury confusion, and it invites the jury to
> render its findings based on emotion or prejudice.

153 F.3d 1166 at 1191 (10th Cir. 1998) (internal quotes and citations

omitted).

Where a State's evidentiary rules are arbitrary or disproportionate to

the purpose they are designed to serve and infringe upon "a weighty interest

of the accused," they may violate a criminal defendant's right to present a

defense. *Id. Holmes,* 547 U.S. at 324 (quotations omitted). *See Janoushek*

*v. Watkins*, 265 Fed.Appx. 737 (10th Cir. 2008). In *Holmes,* the Court found

South Carolina's evidentiary rule to be arbitrary because it permitted

exclusion of third-party evidence based solely on the strength of the

prosecution's evidence against the defendant. Under South Carolina law, if

the prosecution's case was strong enough, evidence of third-party guilt was

excluded even if had great probative value and would not pose an undue risk

of harassment, prejudice or confusion of the issues. *Holmes*, at 329.

**C. Application**

The Kansas rule applied in this case does not suffer from the same defect, as the strength or weakness of the prosecution's evidence against a defendant is no longer a factor in determining the admissibility of third-party perpetrator evidence. Instead, the State's evidentiary rule requires an effective connection or nexus between the crime and the third party, regardless of whether the State's case is direct or circumstantial, strong or weak. This rule rationally serves the end that it was designed to promote, namely, "to focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues… ," *Holmes*, 547 U.S. at 330, and to prevent "sidetrack[ing] the jury into consideration of factual disputes only tangentially related to the facts at issue." *McVeigh,* 153 F.3d at 1191. *See Tahah*, 293 Kan. at 274-275; (rule prevents jury confusion and speculation on "collateral matters wholly devoid of probative value relative to who committed the crime"); *Marsh*, 278 Kan. at 530–31. The Kansas evidentiary rule is thus not arbitrary.

In excluding this evidence, the court neither categorically excluded third-party evidence based on its circumstantial nature, nor weighed the strength of the prosecution's evidence against the Petitioner's evidence, nor required a higher showing of probity for Petitioner's evidence than it did for the State's evidence. The proffered evidence neither established "circumstances reasonably tending to show" that Cook committed the crime

nor an "effective connection" between Cook and the crime, as required to meet conventional evidentiary principles of relevance.

Although this court may have reached a different conclusion had it been trying the case, the Kansas Court of Appeals decision was not constitutionally unreasonable. Thus Petitioner was not deprived of a meaningful opportunity to present a complete defense. *See Crane,* 476 U.S. at 690.

**IV. Lesser Included Offense Instruction**

Petitioner was charged with one count of first-degree premeditated murder. Despite Petitioner's desire or strategy to present an all-or-nothing defense, and over his objection, the court instructed the jury on the lesser included offenses of second-degree murder and voluntary manslaughter. The jury convicted Petitioner of intentional second-degree murder. The State contends that the court's act is not contrary to any United States Supreme Court decision, so Petitioner is not entitled to relief on this claim.

Petitioner asserts that he was convicted of a crime with which he was not charged. But "[i]t is axiomatic that an indictment [or charging information] for one crime carries with it notice that lesser offenses included within the specified crime are also charged and must be defended against." *McHam v. Workman*, 247 Fed.Appx. 118, 120, 2007 WL 2557762, 1 (10th Cir. 2007). *See Bibbee v. Scott*, 1999 WL 1079597, at *4 (10th Cir. Nov. 29, 1999) (holding petitioner received sufficient notice of lesser included offense,

14

for due process purposes, from indictment on greater offense). Under Kansas law at the time of Petitioner's second trial, intentional second-degree murder was a lesser included offense of first-degree premeditated murder. *State v. Amos,* 271 Kan. 565 (2001). Further, the facts admitted in Petitioner's case were non-specific regarding the matters surrounding the homicide and the events which precipitated it, thus the evidence did not show that the offense was clearly of the higher degree. Instead, the evidence was such that the Petitioner might reasonably have been convicted of a lesser offense. The law and the facts of the case thus put defense counsel on notice that an instruction might be proposed on the lesser included offense.

Petitioner additionally contends that the instruction doomed his theory of defense and should not have been given over his objection. An erroneous jury instruction warrants habeas corpus relief only where the instruction " 'so infected the entire trial that the resulting conviction violates due process.' " *Estelle v. McGuire,* 502 U.S. 62, 72 (1991) (*quoting Cupp v. Naughten,* 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right'." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). A jury instruction may not be judged in isolation, but must be considered in the context of the instructions as a whole and the trial record.

Instructing the jury is the responsibility of the judge, not the parties. Thus in *United States v. Cooper*, 812 F.2d 1283 (1987), the Tenth Circuit held that the trial court's *sua sponte* instruction on a lesser included offense, over defendant's objection, did not violate due process, stating:

> The trial judge must give instructions to the jury as required by the evidence and the law where the parties so request or not, and to do so although objections are made. The trial judge is charged with the responsibility for instructing the jury. This is not controlled by the parties …

*Cooper*, 812 F.2d at 1286. Under Tenth Circuit law, the trial court is not bound by a party's all-or-nothing strategy, and may instruct *sua sponte* on any lesser-related offense it believes to be supported by the evidence. Kansas law is consistent; a criminal defendant has no right to an all-or-nothing defense. *See State v. Cordray*, 277 Kan. 43, 54-55 (2004).

No Supreme Court decision has recognized a right of a defendant to preclude the trial court from giving a lesser included offense instruction to the jury. *McHam,* 247 Fed.Appx. at 120. Accordingly, the State court's legal determination that Petitioner had no such right is not contrary to, or an unreasonable application of, clearly established Supreme Court jurisprudence as required for habeas relief under 28 U.S.C. § 2254(d). *Id.* A defendant is not constitutionally entitled to preclude the state trial court from *sua sponte* instructing the jury on the lesser included offense of second degree murder, where the evidence is sufficient to support giving that instruction. *McHam*, 247 Fed.Appx. at 121.

16

Petitioner's traverse contends that the evidence was insufficient to warrant an instruction on any lesser included offense, because no evidence of heat of passion or lack of premeditation was shown. This is a new claim, so is not properly before the court. *See, e.g., Vanderlinden v. Koerner*, 2006 WL 1713929 (D.Kan. 2006), citing *Loggins v. Hannigan*, 45 Fed. Appx 846, 849, 2002 WL 1980469 (10th Cir. 2002) ("We will not consider petitioner's argument … as this issue was first raised in petitioner's traverse to respondents' answer to habeas petition.") A traverse is not the proper pleading to raise additional grounds for relief.

But even if this claim were not procedurally barred, it would be denied on the merits. The Kansas Court of Appeals thoroughly examined the sufficiency of the evidence, and found that the jury could reasonably have found the defendant intentionally killed the victim without premeditation, warranting an instruction on intentional second-degree murder. Because Petitioner's case included evidence that the victim had been strangled, but lacked evidence explaining why the victim was killed, and lacked evidence of the circumstances immediately preceding the murder, the Kansas Court of Appeals' conclusion was reasonable.

**V. Prosecutorial Misconduct**

Petitioner next contends that the prosecutor deprived him of due process and engaged in misconduct in relation to his calling Mr. Hart, the victim's neighbor, to testify at the second trial. The State counters that there

was no lack of notice to the defendant because Hart was an "endorsed witness" from the date the original complaint was filed, *see* KSA 22-3201(6), and there was no misconduct by the prosecutor, as he never misrepresented any evidence. Hart testified that Petitioner tilled the victim's garden only once eight years before her death, and never entered the victim's house. This contradicted Petitioner's testimony that he tilled the victim's garden and entered her house multiple times closer to the date of her death, thus providing an innocent explanation for the presence of his DNA.

Petitioner claims that the State deprived him of due process by failing to give him adequate notice that it would introduce this evidence at his second trial. But Petitioner has not shown any late endorsement of witnesses by the prosecution. The original complaint's endorsement of this witness was sufficient to put Petitioner on notice that Hart could be called to testify against him, whether in the first trial or the second.

More importantly, Petitioner has not shown that the prosecution has any constitutional duty to notify a defendant of inculpatory evidence it intends to use against him at trial. Although a criminal defendant has the right to notice of the charges against which he must defend, a defendant does not have a constitutional right to notice of the evidence which the state plans to use to prove those charges. *Gray v. Netherland*, 518 U.S. 152, 168 (1996). The United States Supreme Court made this point, in holding that a

defendant in a non-capital case has no right to discover lists of prospective government witnesses:

> It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably. There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one; as the Court wrote recently, "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded. . . ." *Wardius v. Oregon*, 412 U.S. 470, 474, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82 (1973).

*Weatherford v. Bursey*, 429 U.S. 545, 559-60 (1977). *See also United States v. Nevels,* 490 F.3d 800 (10th Cir. 2007) (no constitutional right to pretrial discovery of witnesses exists in non-capital cases). Thus the prosecution had no constitutional duty to disclose pretrial that Hart would testify at Petitioner's second trial.

Petitioner also contends that the prosecutor intentionally misled him to believe that Hart would not be called as a witness at his second trial by: 1) not presenting Hart as a witness at the first trial; and 2) by omitting all reference to Hart during the opening statement at the second trial. It is possible that a defendant who is deliberately misled as to the full weight and import of the state's evidence might have a cognizable due process claim. *See Gray*, 518 U.S. at 154 (remanding a defendant's claim that prosecutors misled defense counsel about evidence they intended to use at sentencing); *Mooney v. Holohan,* 294 U.S. 103, 112 (1935) (forbidding the prosecution from engaging in "a deliberate deception of court and jury"). But Petitioner must show that the prosecutor *deliberately* misled him, not just that the

prosecutor's strategy changed over the course of time to increase the chances of conviction. *Weatherford,* 429 U.S. at 559 (finding no due process violation where an unintended evidentiary misrepresentation was made). No evidence of any deliberate misrepresentation has been shown.

## VI. Change of Venue

Petitioner next contends that the trial court deprived him of his right to a fair trial by denying his requests for a change of venue before the second trial. Petitioner states that a change was warranted due to the small, rural nature of the community; the participation of hundreds of its citizens in the week-long search for the victim; and the intensity and nature of the media coverage between his first and second trials. Specifically, the media repeatedly reported about the State's forensic evidence against him, but never published his defense theory that someone had planted that evidence at the victim's house.

### A. Standard of Review

Tenth Circuit precedent is inconsistent regarding the standard of review to apply in a habeas case when reviewing a state court's decision regarding jury impartiality. *Gardner v. Galetka,* 568 F.3d 862, 888 (10th Cir. 2009). *Compare Goss v. Nelson*, 439 F.3d 621, 627 (10th Cir. 2006) (using manifest error standard), *with Hale v. Gibson*, 227 F.3d 1298, 1331 (10th Cir. 2000) (applying abuse of discretion standard and finding no unreasonable application of Supreme Court precedent). Because the Court

believes that the same result would follow from either standard, it does not

speculate on which standard may be appropriate.

## B. Presumed Prejudice

The Constitution requires that criminal defendants be tried by impartial

juries. "The failure to accord an accused a fair hearing violates even the

minimal standards of due process." *Irvin v. Dowd*, 366 U.S. 717, 722

(1961).

> The Sixth Amendment, applied to the states by the Fourteenth
> Amendment, ensures that "[i]n all criminal prosecutions, the accused
> shall enjoy the right to a ... trial[ ] by an impartial jury of the State
> and district wherein the crime shall have been committed." U.S. Const.
> amend. VI. Due process may require a change of venue stemming
> from the "presumed prejudice" following from pretrial publicity in two
> related contexts. First, where pretrial publicity is so pervasive and
> prejudicial that a court could not expect to find an unbiased jury pool
> in the community, it should "presume prejudice," necessitating a
> venue change. *Goss*, 439 F.3d at 628. Second, change of venue may
> be required where the effect of pretrial publicity manifested at jury
> selection is substantial enough to indicate the existence of prejudice
> within the jury pool. *Id.*

*Gardner*, 568 F.3d at 888.

The standard for presuming prejudice from pretrial publicity is high

and rarely met.

> [I]n order for the reviewing court to reach a presumption that
> inflammatory pretrial publicity so permeated the community as to
> render impossible the seating of an impartial jury, the court must find
> that the publicity in essence displaced the judicial process, thereby
> denying the defendant his constitutional right to a fair trial.

*United States v. McVeigh*, 153 F.3d 1166 (10th Cir.1998). The facts do not

approach this threshold.

Petitioner appears to rely instead on the effect of pretrial publicity manifested at jury selection. On direct appeal, Petitioner asserted the following facts in support of his showing of bias:

> . . . only 58 of 107 venire members were questioned; only five of those questioned said they had never heard of the case; two jurors responded to the question of whether they could be impartial by saying they "think" or "feel" they could be; not enough venire members were excused for cause; three venire members stated concerns about the community reaction if they served on the jury; some venire members stated they had read or heard information about the case and had an opinion about it; one venire member's wife had served on the jury at the first trial and told him the community members blamed the first jury for not convicting the defendant; two venire members provided inconsistent answers; some venire members indicated they "thought" they could be impartial or could "probably" be impartial; and the venire panel was exposed to two venire members expressing their opinion that the defendant was guilty.

*Krider*, 41 Kan.App.2d at 372-73,

Petitioner suggests that the trial court should not have accepted the potential jurors' statements of impartiality. "But whether particular jurors can be impartial is a question of fact that we must afford a presumption of correctness. (citation omitted)." *Goss*, 439 F.3d at 633.

Petitioner additionally contends that some of the potential jurors made equivocal statements regarding their impartiality. But such statements do not suggest impermissible partiality, as the United States Supreme Court has repeatedly held:

> ... the Supreme Court has noted that in highly publicized cases potential jurors often make ambiguous and inconsistent statements regarding partiality due to unfamiliarity with the nature of legal questioning. Such statements in and of themselves do not suggest impermissible partiality. *Patton*, 467 U.S. at 1039, 104 S.Ct. 2885.

*Goss*, 439 F.3d at 633.

Petitioner also contends that some venire members admitted to having read or heard about the case, but it is not enough for a defendant to show juror exposure to news accounts. *Murphy v. Florida*, 421 U.S. 794, 799 (1975). Rather, the defendant must show a "trial atmosphere that had been utterly corrupted by press coverage." *Goss,* 439 F.3d at 631, quoting *Murphy*, 421 U.S. at 798.  Petitioner has failed to show that the effect of pretrial publicity manifested at jury selection was substantial enough to reveal prejudice within the jury pool. The state court's decision that no presumptive prejudice had been shown was not an unreasonable application of clearly established federal law.

### C. Actual Prejudice

Petitioner may nonetheless show actual prejudice. Where prejudice cannot be presumed, actual prejudice must be established. *Skilling v. United States*, __ U.S. __, 130 S.Ct. 2896, 2917 (2010).

> Actual prejudice "manifest[s] at jury selection" when voir dire reveals "the effect of pretrial publicity … is so substantial as to taint the entire jury pool." *Goss*, 439 F.3d at 628. To establish actual prejudice, the party seeking a change of venue must demonstrate "the actual existence of [ ] an opinion in the mind of the juror as will raise the presumption of partiality." *Murphy*, 421 U.S. at 800, 95 S.Ct. 2031 (internal quotation marks omitted) (quoting *Irvin*, 366 U.S. at 723, 81 S.Ct. 1639). In cases of actual prejudice, "the voir dire testimony and the record of publicity [ ] [must] reveal the kind of wave of public passion that would have made a fair trial unlikely by the jury that was empaneled as a whole." *Patton v. Yount*, 467 U.S. 1025, 1040, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).

*House v. Hatch*, 527 F.3d 1010, 1024 (10th Cir. 2008).

The Kansas Court of Appeals found no actual prejudice, stating: "[n]early all of the responses cited by [Petitioner] involved venire members but not the selected jurors," and "[t]he 12 jurors in this case were either not exposed to pretrial publicity or else stated it would not affect their consideration of the evidence." *Krider*, 41 Kan.App.2d at 373. This conclusion was a reasonable application of the law. "It is not required … that the jurors be totally ignorant of the facts and issues involved. …  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd,* 366 U.S. 717, 722 (1961).

The Court of Appeals further found that in light of the voir dire record as a whole, Petitioner failed to demonstrate prejudice: "the venire members who indicated they might be influenced by the community or the publicity surrounding the trial were eliminated … leaving a panel of jurors who indicated they could be impartial … Voir dire served its purpose." *Krider*, 41 Kan.App.2d at 373.

The record supports the factual findings of the Court of Appeals. *See* R. XI, 97-98, 108, 125-26, 133-34, 153-54, 156, 165-66, 203. Its decision was reasonable in light of the facts, and was neither contrary to, nor an unreasonable application of, any United States Supreme Court law. Accordingly, federal habeas relief is not warranted.

## VII. Evidentiary hearing

The court finds no need for an evidentiary hearing. "[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record." *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005); *see Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). The record in this case refutes Petitioner's allegations and otherwise precludes habeas relief.

## VIII. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See United States v. Bedford*, 628 F.3d 1232 (10th Cir. 2010).

The Court believes that this standard is met as to one issue only: whether the trial court's application of the "effective connection" test and exclusion of Petitioner's third-party perpetrator evidence violated Petitioner's

25

right to present a complete defense. Reasonable jurists may find this court's assessment of that constitutional to be debatable or wrong. *See e.g., Narrod v. Napoli*, 763 F.Supp.2d 359 (W.D.N.Y. 2011) and cases cited therein (finding the State court unreasonably applied clearly-established Supreme Court precedent concerning the right to present a complete defense by applying a heightened standard of probity—the "clear link" standard; but finding such error harmless because the excluded third-party evidence, if admitted, would not have created otherwise nonexistent reasonable doubt). Here, any error in applying a higher standard of probity cannot be found to be harmless; the evidence against the Petitioner, which was weak with regard to the Petitioner's motive for the crime and the means by which it was committed, was not overwhelming. The excluded evidence was crucial to the defense of the case. Appellate review on this issue is therefore warranted.

The court therefore grants a certificate of appealability on this issue and denies it on all other issues.

**IX. IFP Motion**

Petitioner has filed a motion to proceed without prepayment of fees, Dk. 26, but the record reflects that Petitioner previously paid the $5.00 filing fee. This motion is therefore denied as moot.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 is denied.

IT IS FURTHER ORDERED that the motion to proceed in forma pauperis (Dk. 26) is denied as moot.

Dated this 11th day of April, 2012 at Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge